**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO.:  23-MJ-31** |
| | ) | |
| **REFUGIO VERONICA QUINTERO** | ) | |
| **MORENO,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**GOVERNMENT'S DETENTION MEMORANDUM**

On February 7, 2023, Refugio Veronica Quintero Moreno ("Defendant") was arrested on a complaint charging offenses involving the trafficking of large amounts of cocaine, methamphetamine, and fentanyl from Mexico to locations all over the United States.[1]  The Defendant was a member of an international drug trafficking organization ("DTO") based out of Mexico that transported multi-kilogram quantities of fentanyl, cocaine, and methamphetamine throughout the United States.  As detailed below, the Defendant is charged with drug trafficking offenses that carry a presumption that no condition or combination of conditions will sufficiently guarantee the Defendant's presence in court and protect the safety of the community.  Further, the Defendant faces significant jail time, including a mandatory minimum sentence of ten years; maintains familial and coconspirator contacts in Mexico; has no ties to the District of Columbia; and lives approximately 12 miles from the United States-Mexico border.  Accordingly, the Defendant presents a serious risk of flight and danger to the community that cannot be mitigated by any condition or combination of conditions and should remain detained pending trial.

---

[1] As will be discussed below, the Defendant was arrested after a prior indictment against her was dismissed without prejudice.

**BACKGROUND**

On March 22, 2022, a federal grand jury sitting in the District of Columbia returned an indictment against the Defendant and two others, charging all three defendants with: (1) conspiracy to import five kilograms or more of cocaine, 400 grams or more of fentanyl, and 500 grams or more of methamphetamine into the United States, in violation of 21 U.S.C. §§ 952(a), 960(b)(1)(B)(ii), (F), (H), and 963; and (2) conspiracy to distribute five kilograms or more of cocaine, 400 grams or more of fentanyl, and 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii)(II), (vi), (viii), and 846.  Case No. 1:22-cr-00095-RJL, *United States v. Soto Jr. et al.*, Dkt. No. 1.

On April 6, 2022, the Defendant, was arrested in Nogales, Arizona, on a warrant issued by this Court in Case No. 1:22-cr-00095-RJL.  On April 12, 2022, a U.S. Magistrate Judge for the District of Arizona, held a detention hearing and denied the government's motion for pretrial detention and ordered the Defendant released.  The same day, the Honorable Judge Richard J. Leon, U.S. District Judge for the District of Columbia, granted the government's Motion for Temporary Detention Pending Review and Appeal of Release Order.  Case No. 1:22-cr-00095-RJL, *United States v. Soto Jr. et al.*, Minute Order, April 12, 2022.

On May 5, 2022, the Defendant made her initial appearance and was arraigned in this District remotely via video conference from Arizona before the Honorable Robin Meriweather, U.S. Magistrate Judge for the District of Columbia.  After an oral motion for release by the Defendant, Judge Meriweather issued a Minute Order stating the motion for release would be heard by the Honorable Richard J. Leon, U.S. District Judge for the District of Columbia.  Case No. 1:22-cr-00095-RJL, *United States v. Soto Jr. et al.*, Minute Order, May 5, 2022.  On June 3,

2022, Judge Leon granted the government's Motion for Review and Appeal of Release Order

and ordered the Defendant detained pending trial.  Case No. 1:22-cr-00095-RJL, *United States v.*

*Soto Jr. et al.*, Minute Order, June 3, 2022.

On August 31, 2022, Judge Leon held a hearing on defense motions to change venue.  At

the conclusion of the hearing, Judge Leon took the matter under advisement.  On January 4,

2023, the Defendant joined a codefendant's Motion to Dismiss Indictment for Violation of

Speedy Trial Act.[2]  Case No. 1:22-cr-00095-RJL, *United States v. Soto Jr. et al.*, Dkt. No. 45.

The government filed a Memorandum in Opposition on January 13, 2023. Case No. 1:22-cr-

00095-RJL, *United States v. Soto Jr. et al.*, Dkt. No. 46.  On February 2, 2023, Judge Leon held

a hearing on the motions.  Judge Leon dismissed the indictment without prejudice on February 7,

2023.  Case No. 1:22-cr-00095-RJL, *United States v. Soto Jr. et al.*, Dkt. No. 50.[3]

On February 3, 2023, the government obtained a criminal complaint in this District,

charging the Defendant and two others with (1) conspiracy to import five kilograms or more of

cocaine, 400 grams or more of fentanyl, and 500 grams or more of methamphetamine into the

United States, in violation of 21 U.S.C. §§ 952(a), 960(b)(1)(B)(ii), (F), (H), and 963; and

(2) conspiracy to distribute and possess with intent to distribute Ritalin, five kilograms or more

of cocaine, 400 grams or more of fentanyl, and 500 grams or more of methamphetamine, in

violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii)(II), (vi), (viii), and 846.  Case No. 1:23-mj-

---

[2] The Defendant argued that excludable delay while the motion was under advisement by Judge
Leon had exceeded the 30 days provided in 18 U.S.C. § 3761(h)(1)(H) and that the indictment
should be dismissed with prejudice or transferred to Arizona.
[3] On the same date, prior to the dismissal, Judge Leon issued a Minute Order and Memorandum
Opinion, denying Defendant's Motion for Change of Venue.  Case No. 1:22-cr-00095-RJL,
*United States v. Soto Jr. et al.*, Dkt. No. 49.

00031, *United States v. Soto Jr. et al.*, Dkt. No. 1.  The Defendant was arrested on a warrant

issued by this Court on February 7, 2023.

The complaint in this case is the product of an extensive, long-term investigation

conducted by agents from the Federal Bureau of Investigation ("FBI"). The government

anticipates that the evidence at trial will show that the Defendant was part of a larger, complex

international narcotics conspiracy from at least January 2020 until her arrest on April 6, 2022.

The ultimate objective of the conspiracy was to import hundreds of kilograms of fentanyl,

cocaine, and methamphetamine into the United States and to distribute those controlled

substances across the United States.

At the time of her arrest, the Defendant was a FedEx employee who coordinated the

shipments of controlled substances, including fentanyl, cocaine, and methamphetamine from

Mexico through her FedEx in Nogales, Arizona, to at least 21 different states in the United States

and the District of Columbia.  The Defendant utilized her position at FedEx to send the narcotics

through at least 12 different legitimate business accounts without those businesses' knowledge.

She attempted to hide these mailings from law enforcement by sending the narcotics parcels via

overnight priority air shipping, which allowed for quick delivery to narcotics traffickers

throughout the United States.  She coordinated with at least 14 different narcotics couriers who

would bring fentanyl, cocaine, and methamphetamine across the United States-Mexico border.

She also coordinated with a Mexico-based DTO member who was responsible for sending the

couriers and the narcotics.

In this investigation, FBI seized a total of approximately 87.5 kilograms of fentanyl,

cocaine, heroin, and methamphetamine directly tied to the Defendant and her coconspirators.

4

The Defendant and her coconspirators shipped 63.5 of the kilograms of controlled substances, including fentanyl, cocaine, and methamphetamine seized by FBI during only a 74-day period in September through November 2021.  The fentanyl was in both powder form and in the form of fake OxyCodone 30 mg tablets.  These seizures account for just 23 percent of the identified parcels the Defendant and her coconspirators sent under their scheme during that 74-day period.  This period of seizures was directly after FBI approached the Defendant in August 2021 and showed her a photograph of methamphetamine that she shipped via FedEx in Nogales.  Following FBI's conversation with the Defendant in August, she stopped using her cellphone number but continued to ship narcotics on behalf of the DTO using her position at FedEx.

On April 6, 2022, FBI also seized approximately nine kilograms of cocaine, one kilogram of black tar heroin, five and a half kilograms of fentanyl powder, and one and a half kilograms of fentanyl pills from a storage unit of a coconspirator.  The storage unit was located less than one mile from the Defendant's FedEx, and the narcotics recovered were boxed and ready for mailing.

If this case proceeds to trial, the government's evidence at trial is expected to consist of CCTV video footage showing the Defendant accepting and mailing narcotics parcels from the narcotics couriers; FedEx records showing the Defendant's use of business accounts to mail parcels under the scheme since at least January 2020; the Defendant's own admissions about her role in the organization; and physical evidence stemming from the seizures of fentanyl, cocaine, and methamphetamine all over the United States.

The Defendant is a resident of Arizona.  The government is not aware of any contacts the Defendant maintains in the District of Columbia.

**LEGAL STANDARD**

Under the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*, federal courts must order a

defendant's pre-trial detention upon determining that "no condition or combination of conditions

would reasonably assure the appearance of the person as required and the safety of any other

person and the community." 18 U.S.C. § 3142(e). A finding of dangerousness must be supported

by clear and convincing evidence.18 U.S.C. § 3142(f); *see United States v. Simpkins*, 826 F.2d

94, 96 (D.C. Cir. 1987). A finding of risk of flight must be supported by a preponderance of the

evidence. *Simpkins*, 826 F.2d at 96. If the Court finds that no conditions will reasonably assure

both the appearance of the defendant and the safety of any other person and the community, he

or she shall order the defendant detained. 18 U.S.C. § 3142(e)(1). Thus, detention is appropriate

where a defendant is either a danger to the community or a flight risk; it is not necessary to prove

both.

The Bail Reform Act lists the following four factors as relevant to the determination of

whether detention is appropriate: (1) the nature and circumstances of the crimes charged, (2) the

history and characteristics of the defendant, (3) the seriousness of the danger posed by the

defendant's release, and (4) the evidence of the defendant's guilt. *See* 18 U.S.C. § 3142(g).

**ARGUMENT**

**Statutory Presumption of Dangerousness and Risk of Flight Applies**

Under 18 U.S.C. § 3142(e)(3)(A), there is a rebuttable presumption that no conditions

will assure the appearance of the person as required and the safety of any other person and the

community if the defendant is charged with a Controlled Substances Act offense with a statutory

maximum of 10 years or more. In this case, the Defendant is charged with an offense for which

6

the maximum term of imprisonment is life as prescribed by the Controlled Substance Act.  As

the penalty of life imprisonment is more than 10 years, the presumptions of Section 3142(e)

apply here.

A complaint charging a qualifying offense, as is the case here, is sufficient to trigger this

rebuttable presumption.  *United States v. Smith*, 79 F.3d 1208 (D.C. Cir. 1996); *United States v.*

*Mosuro*, 648 F. Supp. 316, 318 (D.D.C. 1986).  When the presumption is triggered, it operates

"at a minimum to impose a burden of production on the defendant to offer some credible

evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371

(D.C. Cir. 1985).  However, the presumption is not erased when a defendant proffers evidence to

rebut it; rather the presumption remains as an evidentiary finding militating against release and to

be weighed along with all the evidence relating to the factors listed in Section 3142(g).  *See*

*United States v. Cherry*, 221 F. Supp. 3d 26, 32 (D.D.C. 2016) (citing *United States v. Ali*, 793 F.

Supp. 2d 386, 391 (D.D.C. 2011) and *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir.

1986)).  In other words, "it does not follow that the effect of the presumption disappears as soon

as the defendant produced some contrary evidence.  Congress framed the flight presumption in

light of its general finding, based on extensive testimony, that flight to avoid prosecution is

particularly high among those charged with major drug offenses." *United States v. Martir*, 782

F.2d 1141, 1144 (2d Cir. 1985); *see also Cherry*, 221 F. Supp. 3d at 32; *Ali*, 793 F. Supp. 2d at

391.  For all of the reasons addressed below, the Defendant will be unable to satisfy her burden

to rebut the presumption that no condition or combination of conditions will reasonably assure

the appearance of the Defendant and the safety of the community.

**Nature and Circumstances of the Offenses Charged**

The nature and circumstances of the offense charged establish that the Defendant is a risk of flight and a danger to the community.  The trafficking activities of the Defendant and her coconspirator DTO members demonstrate that the Defendant has direct contact with and access to Mexico-based coconspirators, as well as their resources.  This, coupled with the fact that the Defendant's home is 12 miles from the United States-Mexico border yet 2,314 miles from Washington, D.C., provides the Defendant with the ease, ability, and motive to flee the United States and avoid prosecution.

The object of the DTO, of which the Defendant was a critical member, is to import and covertly ship hundreds of kilograms of fentanyl, cocaine, and methamphetamine into the United States through private mail carriers for financial gain. The Defendant has established that she has the means, motive, and willingness to engage in a course of conduct that presents a direct threat to citizens across the United States, including distributing fentanyl and counterfeit Oxycodone pills during an opioid epidemic that is killing over 68,000 Americans every year.[4]  Moreover, she abused a position of trust in her employment with FedEx to commit these offenses and fraudulently billed third-party businesses for the costs of shipping.  Were she to be released and flee to Mexico, there is nothing at present preventing the Defendant from again seeking to import substantial amounts of dangerous narcotic drugs to the United States for profit.  At present, she would have the ability to do so alongside the existing DTO network based in Mexico, with

---

[4] National Institute on Drug Abuse, *Overdose Death Rates*, Jan. 20, 2022, https://nida.nih.gov/drug-topics/trends-statistics/overdose-death-rates (last accessed Apr. 11, 2022).

whom she has direct contact regarding the importation and shipment of narcotics. As a result, if released the Defendant would present a danger to the community.

Accordingly, there is no condition or combination of conditions that would assure her appearance in the District of Columbia to face the Indictment against her. *See* 18 U.S.C. § 3142(e)(1).

### History and Characteristics of the Defendant

The Defendant's prior history and characteristics establish her heightened risk of flight in this case. A determination of risk of flight must be supported only by a preponderance of the evidence. *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996). For the following reasons, there is no condition or combination of conditions that would assure her appearance in the District of Columbia to face the serious charges alleged against her in the complaint.

The Defendant has no contacts in the District of Columbia. Additionally, she has direct ties to Mexico through at least one maternal sibling who lives there and direct ties and regular contact with at least one coconspirator based in Mexico. There is an enhanced risk of flight in this case due to the potential sentence the Defendant faces, her proximity and ties to Mexico, and her lack of ties to the District of Columbia. While the Defendant has children in the United States, all are adults, except her youngest child who is 17 and does not live with her. While the Defendant had been steadily employed at FedEx, she was arrested at FedEx after utilizing her position there to ship narcotics.

The possibility of a severe sentence is an important factor in assessing a defendant's incentive to flee. *See United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 (D.D.C. 2013) (holding the nature and circumstances of the offenses charged against defendant strongly favor detention

9

because of the substantial incentive to flee the United States); *United States v. Anderson*, 384 F.

Supp. 2d 32, 36 (D.D.C. 2005) (holding the gravity of the offenses and the potential prison term

create a considerable incentive for the defendant to avoid prosecution and the likelihood of

imprisonment in the event of a conviction); *see also Ali*, 793 F. Supp. 2d at 392.  As addressed

above, the Defendant faces a mandatory minimum sentence of 10 years if convicted, and the

U.S. Sentencing Guidelines range for the charged offense would be even higher—292 to 365

months if based on only the amount of methamphetamine seized.  *See* 21 U.S.C.

§ 960(b)(1)(B)(ii); U.S.S.G. § 2D1.1(c).  And, in light of the strength of the evidence, this factor

is a significant one in this case.

Federal courts have repeatedly recognized that "[f]light to avoid prosecution is

particularly high among persons charged with major drug offenses," because "drug traffickers

often have established ties outside the United States . . . [and] have both the resources and

foreign contacts to escape to other countries." *See, e.g., Alatishe*, 768 F.2d at 370 n.13 (citing S.

Rep. No. 98-225 at 20 (1983), reprinted in 1984 U.S.C C.A.N. 1, 23).  This is nowhere more

evident than in the type of transnational organized crime in which the Defendant has engaged.

Organized transnational drug conspiracies often span multiple countries and have the potential to

generate millions of dollars in gross proceeds from the sale of potent controlled substances.

Indeed, "Congress made 'risk of flight' a ground for detention because it believed that there were

major drug dealers to whom the posting and losing of even large amounts of money bond were

not a deterrent, but a mere cost of doing business." *United States v. Battle*, 59 F. Supp. 2d 17, 19

(D.D.C. 1999).

10

In sum, the Defendant has the motive and opportunity to flee the country and not appear in the District of Columbia. *See Hong Vo*, 978 F. Supp. 2d at 43 (finding detention warranted because not only was defendant indicted on serious charges carrying a severe punishment potential, but defendant had ability to flee the United States); *see also Anderson*, 384 F. Supp. 2d at 36 (finding detention warranted because not only did the defendant have the ability to flee D.C. and the United States, but also had the ability to live comfortably in foreign jurisdiction and evade capture due to his substantial assets abroad). There is no condition or combination of conditions that would assure her appearance in the District of Columbia to face the charges against her. *See* 18 U.S.C. § 3142(e)(1).

## Safety of the Community

A determination of dangerousness to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). Federal courts have recognized that drug traffickers, particularly those in positions of authority, are likely to continue engaging in drug related activities if released on bail and thus constitute a danger to the community. *See, e.g., Alatishe*, 768 F.2d at 370 n.13 (citing S. Rep. No. 98-225 at 20 (1983), reprinted in 1984 U.S.C C.A.N. 1, 23); *accord United States v. Creekmore*, 1997 W.L. 732435 (D.D.C. 1997). The Defendant participated in an international drug transportation and distribution organization which imported fentanyl, cocaine, and methamphetamine—all dangerous controlled substances—into the United States for distribution to the United States public at large. The Defendant personally shipped kilograms of fentanyl pills, made to appear like Oxycodone 30 milligram pills, which are not just dangerous, but deadly. If she were released and continued in this conduct, she would pose a significant risk to the safety of the community. Accordingly, there is no condition or

combination of conditions that would assure the safety of the community.  *See* 18 U.S.C.

§ 3142(e)(1).

**<u>Weight of the Evidence</u>**

Where the evidence of guilt is strong, it provides a considerable additional incentive to

flee.  *See United States v. Medina*, 255 F. Supp. 2d 3, 4 (D.D.C. 2006) (finding detention

warranted because government's evidence was strong against the defendant); *see also United*

*States v. Vergara*, 612 F. Supp. 2d 36, 37 (D.D.C. 2009).

The evidence against the Defendant is overwhelming.  The evidence includes clear, in-

color CCTV video footage showing the Defendant accepting and mailing narcotics parcels from

the narcotics couriers; FedEx records showing the Defendant's fraudulent use of business

accounts to mail parcels under the scheme since at least January 2020; the Defendant's own

admissions about her role in the organization and knowledge that she was shipping narcotics

from Mexico; and physical evidence stemming from the seizures of fentanyl, cocaine, and

methamphetamine all over the United States.  In particular, FBI informed the Defendant in

August 2021 that she was shipping narcotics, showing her a photograph of seized

methamphetamine.  Nevertheless, the Defendant continued to personally ship dozens of

packages containing narcotics on behalf of the DTO, and an additional 85.5 kilograms in

narcotics were seized by the FBI after being shipped from the Nogales FedEx by Quintero or her

coconspirators or after they were prepared for shipment.

Given the strength of the evidence against her, there is no condition or combination of

conditions that would assure the Defendant's appearance in court or the safety of the community.

*See* 18 U.S.C. § 3142(e)(1).

**No Change in Circumstances**

On June 3, 2022, when Judge Leon denied Defendant's Motion to Reconsider Detention

and Impose Conditions of Release, he noted:

> Defendant Quintero Moreno is charged with drug trafficking offenses that, pursuant
> to 18 U.S.C. § 3142(e)(3)(A), carry with them a statutory rebuttable presumption
> that no condition or combination of conditions will reasonably assure the
> appearance of the person as required and the safety of the community. Defendant
> Quintero Moreno's ties to the United States are insufficient to overcome the
> statutory presumption that no condition will assure her appearance in the District,
> especially in light of her ties to Mexico and the nature of the cross-border drug-
> trafficking conspiracy charged. Furthermore, the fact that the defendant continued
> participating in the conspiracy after being confronted with evidence of the drug
> shipments at issue in this case lends additional weight to the conclusion that no
> conditions can assure that the defendant will appear or that the community will be
> adequately protected should the defendant be released. Accordingly, because the
> defendant has not rebutted the statutory presumption, the United States' Motion for
> Review is GRANTED and it is further ORDERED that defendant Quintero Moreno
> shall remain detained pending trial. SO ORDERED.

Case No. 1:22-cr-00095-RJL, *United States v. Soto Jr. et al.*, Minute Order, June 3, 2022.

This analysis of the factors provided in the Bail Reform Act remains true today.

Although the Defendant's original indictment was dismissed, it was dismissed without

prejudice—the appropriate remedy for the Speedy Trial Act Violation which occurred.  While

the government was at fault in failing to file a motion to toll the speedy trial time after the period

under which Judge Leon took the venue motions under advisement exceeded 30 days, this error

was not an error committed in "bad faith," under "a pattern of neglect," or "something more than

an isolated unwitting violation."  *See United States v. Taylor*, 487 U.S. 326, 339 (1988).

Further, counsel for the Defendant, and codefendants, Angel Adan Valenzuela and

Benjamin Soto, Jr., informed Judge Leon and the government at the August 31, 2022, venue

motions hearing of their plans moving forward in preparing the case for trial.  Counsel for the

defendants described the large volume of discovery that needed to be assessed, the busy

schedules of each attorney, and the necessity of significant motions practice.  In addition, Judge

Leon did not rule on the venue motion until February 7, 2023.  It is abundantly clear from the

record that the case was not poised for trial at any point during the non-excludable delay which

caused the dismissal of the indictment.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

14

**CONCLUSION**

An analysis of the factors laid out in 18 U.S.C. § 3142(g) establishes (a) by clear and convincing evidence that there are no conditions or combination of conditions that reasonably assures the safety of the community and (b) by a preponderance of the evidence that that there are no conditions or combination of conditions that reasonably assures the appearance of the Defendant in court.  *See* 18 U.S.C. § 3142(e)(1), (f)(2).  Accordingly, the Defendant should remain detained pending trial.

Respectfully submitted this 9th day of February 2023.


ARTHUR G. WYATT, Chief
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice

By:  ___/s/_____
Kate Naseef, Trial Attorney
Samantha Thompson, Trial Attorney
United States Department of Justice
Narcotic and Dangerous Drug Section
145 N Street, Northeast
East Wing, Second Floor
Washington, D.C. 20530
Kate.Naseef@usdoj.gov
(202) 514-0917

15

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent via ECF to counsel of record for the Defendant, this 9th day of February 2023.

By:        /s/
               Kate Naseef
               Trial Attorney
               Narcotic and Dangerous Drug Section
               Criminal Division
               U.S. Department of Justice